**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| **ROBERT J. IANUALE**, and : | |
| **SHAUNA L. ALVAREZ**, : | |
| : | |
| Plaintiffs, : | |
| : | Civ. Action No.: 15-8256 (FLW)(DEA) |
| v. : | |
| : | **OPINION** |
| **KEYPORT TOWNSHIP;** : | |
| **KEYPORT TOWNSHIP POLICE** : | |
| **DEPARTMENT; CHIEF OF** : | |
| **POLICE GEORGE CASALETTO,** : | |
| **in his personal, individual and official** : | |
| **capacity; SERGEANT MICHAEL A.** : | |
| **FERM, in his personal, individual and** : | |
| **official capacity; PATROLMAN** : | |
| **JOSEPH RUTH, in his personal,** : | |
| **individual and official capacity; and** : | |
| **JOHN DOE KEYPORT TOWNSHIP** : | |
| **POLICE OFFICERS 1-25 (fictitious** : | |
| **Employees of the Keyport Police** : | |
| **Department) in their personal,** : | |
| **individual and official capacities**, : | |
| : | |
| Defendants. : | |
| _____: | |

**WOLFSON, United States District Judge:**

In this case, *pro se* plaintiffs Robert Ianuale and Shauna Alvarez (collectively, "Plaintiffs")

assert violations of their constitutional rights, as well as various state claims under New Jersey

law, arising from their arrest in connection with a domestic dispute.  Presently before the Court is

a motion for summary judgment filed by defendants the Borough of Keyport (the "Borough"), the

Keyport Police Department (the "Police Department"), the Chief of Police George Casaletto

("Chief Casaletto"), Sergeant Michael Ferm ("Officer Ferm") and Patrolman Joseph Ruth ("Officer Ruth") (collectively, "Defendants")[1] on the basis of qualified immunity.

For the following reasons, Defendants' motion for summary judgment is granted in part, and denied in part. Plaintiffs' claims against Officer Ferm, Officer Ruth and the Borough in Counts I, II, III, and VI are dismissed. Plaintiffs' claims against the Borough and Chief Casaletto in Counts IV and V are dismissed, as well. Finally, I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law based claims in Counts VII and VIII. Therefore, this matter is dismissed without prejudice and the statute of limitations tolled, and Plaintiffs may re-file their state law claims in State court within thirty (30) days from the date of the Order accompanying this Opinion. See 28 U.S.C.S. § 1367(c)-(d).

## I.   BACKGROUND AND PROCEDURAL HISTORY[2]

Before I recount the factual background in this matter, I note that Defendants have filed their motion for summary judgment before discovery commenced, which has resulted in the parties providing two different and conflicting versions of the events that occurred. For the sake of clarity, I will address each version separately.

### (i).   Defendants' Statement of Material Facts[3]

---

[1] In the Complaint, the Borough was improperly pled as "Keyport Township," and the Police Department was improperly pled as "Keyport Township Police Department."

[2] Both Defendants and Plaintiffs have failed to provide a separate statement of material facts, albeit the parties included their statements in their respective briefs. See Civ. R. 56.1(a) (stating that the movant and the opponent of a summary judgment shall furnish a statement of material facts, and that "[e]ach statement of materials fact shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law."). Despite their noncompliance with the Rules, I will consider both statements of material facts.

[3] In their motion, Defendants rely heavily on Alvarez's police report to support their version of the events. See Defs.' Ex. C. Under Rule 803(8)(C), a report or a statement of public office is

On November 28, 2013, Ianuale requested police assistance at 52 Broad Street, Suite 3, Keyport, New Jersey at approximately 12:15 a.m.  Defs.' Statement of Material Facts ("Defs.' Statement") ¶ 2; see Pls.' Compl. at ¶ 17.  Shortly thereafter, Officer Ferm arrived at the apartment, and he witnessed Alvarez crying while sitting on a bench outside of her shared home with Ianuale. Id. at ¶¶ 1, 3.  Alvarez advised Officer Ferm that she had been in an altercation with Ianuale, her boyfriend, and that Ianuale had smashed her cellphone on the ground, resulting in a broken screen and phone cover.  Id. at ¶ 4; Defs.' Ex. C.  While Officer Ferm was speaking to Alvarez, Officer Ruth arrived.  Id. at ¶ 5.  Almost immediately thereafter, Ianuale exited the apartment, and he requested that Officers Ferm and Ruth arrest Alvarez for assault.  Id. at ¶ 6.  However, the Officers both noted that Ianuale did not have any visible injuries.  Id.

After he told Officers Ferm and Ruth that he had been assaulted, Ianuale informed the Officers that he had previously equipped his apartment with video surveillance equipment, which had captured the assault.  Id. at ¶ 7.  Ianuale escorted the Officers into the apartment where he showed them the video recording (the "Video").  Id. at ¶ 8.  In the arrest report, Officer Ferm stated:

---

admissible "if the opponent does not show that the source of information or other circumstances indicates a lack of trustworthiness."  Fed. R. Evid. 803(8)(C); see Clark v. Clabaugh, 20 F.3d 1290, 1294-1295 (3d Cir. 1994) (stating that a district court may rely on a police report on a motion for summary judgment, pursuant to Rule 803(8)(C), unless a party presents some evidence that would impugn its trustworthiness); see also Hickson v. Marina Assocs., 743 F. Supp. 2d 362, 371 n.11 (D.N.J. 2010) (on a motion for summary judgment, the district court considered an investigation report as part of the record, even though the plaintiff disagreed with the conclusions in that report, because "the report essentially repeated facts already alleged or established in the case," and it served to show that the plaintiff was aware of those facts).  Here, other than bald assertions, Plaintiffs have failed to produce any evidence indicating that Alvarez's police report is untrustworthy, and as such, this Court may rely on the police report on this motion.  However, because discovery has not commenced, and Plaintiffs have not had the opportunity to challenge these facts in depositions to impugn the trustworthiness of the report, I will only recount the facts in the police report as setting forth Defendants' version of the events.

> On the video this officer and Ptl. Ruth observed [Alvarez] walk into a bathroom with [Ianuale] following her. She came out and went toward the exit door but he stepped in front of her. They began pushing each other a little then [Alvarez] started to use her phone and [Ianuale] snatched it from her hands and smashed it on the hard wood floors breaking the phone.  [Alvarez] then started chasing [Ianuale] and punching and kicking him.  It appeared [that Ianuale] smashed the phone again.

Defs.' Ex. C; see Defs.' Statement at ¶ 9.  After watching the Video, Officer Ferm advised Ianuale that "he was under arrest for criminal mischief under domestic violence," N.J.S.A. 2C:17-3.  Id. at ¶ 11.  However, Ianuale told Officer Ferm that he was not under arrest, and Ianuale remained seated in his chair.  Id. at ¶ 12.  Officer Ferm once again informed Ianuale that he was under arrest, and the Officers asked Ianuale to stand up, but Ianuale refused to stand and he held on to the chair. Id. at ¶¶ 13-14.  Officer Ferm then advised Ianuale that he would be charged with resisting arrest, which prompted Ianuale to stand to be handcuffed.  Id. at ¶ 15.

Officer Ruth also informed Alvarez that "she was under arrest for simple assault under domestic violence," N.J.S.A. 2C: 12-1.  Id. at ¶ 16.  Unlike Ianuale, Alvarez promptly complied with the Officer's instructions.  Id.  Both Plaintiffs were transported to the Police Department without incident.  Id. at ¶ 18.  While at the Police Department, Officer Ferm advised Alvarez of her Miranda Rights, which she waived, and Alvarez provided a written statement that Ianuale had smashed her cellphone and he struck her face.[4]  Id. at ¶ 20.  Officer Ferm noted that Alvarez had a red mark on her nose, which was located just below her right eye.  Id.  Several hours later, Alvarez was released on her own recognizance.  Id. at ¶ 23.  While Ianuale refused to provide a written statement, see id. at ¶ 22, he was released after posting bail.  Id. at ¶¶ 23-25.

---

[4] Ianuale was later charged with simple assault, N.J.S.A. 2C:12-1, based on these allegations.  See Defs.' Ex. E.

On March 13, 2014, Ianuale, represented by counsel, pled guilty to a downgraded charge of violating Keyport Municipal Ordinance 4-18.3, a disorderly person offense, in connection with the domestic dispute on November 28, 2013.  Id. at ¶ 27; see Defs.' Ex. E.  Alvarez also pled guilty to the same amended charge.  Id. at ¶ 26; see Defs.' Ex. D.  Notably, both Plaintiffs signed a "Request to Approve Plea Agreement," which states that they acknowledged and agreed to the following:

> I understand the nature of the amended charge(s) against me and the consequences of my guilty plea. I understand and agree voluntarily to the terms of the plea agreement set forth above. I further understand that if the judge does not accept my guilty plea or agree with the recommended sentence, I can withdraw it and plead not guilty.

[Defs.' Exs. D, E].  In addition, both Plaintiffs separately acknowledged and agreed to handwritten amendments to the plea agreement, which state: "Δ [or, defendant] stipulates probable cause," and Ianuale also agreed to "no civil action."  Defs.' Ex. E.  Finally, Ianuale's plea agreement notes that oral argument was held.  Id.

### (ii).  Plaintiffs' Statement of Material Facts[5]

On November 28, 2013, Plaintiffs went to a local bar where Alvarez broke her cellphone by dropping it on the ground.  Pls.' Counterstatement of Material Facts ("Pls.' Counterstatement") ¶ 3.  Plaintiffs purportedly left the local bar because Alvarez "began to have a serious anxiety attack due to her drinking since 8:00pm that evening, her being upset about her broken cell-phone,

---

[5] I note that the vast majority of Plaintiffs' assertions in their Counterstatement of Material Facts do not cite to any evidence in the record, which is required.  See L. Civ. R. 56.1(a) (stating that a movant must set forth material facts in separately numbered paragraphs "citing to the affidavits and other documents submitted in support of the motion.").  Although pro se Plaintiffs have violated this Local Rule, I will nevertheless consider these factual assertions for the purposes of reciting Plaintiffs' version of the events; essentially, Plaintiffs' version amounts to nothing more than mere allegations.  Ultimately, however, the Court's decision, on this motion, will be made based only on undisputed facts.

and the overwhelming overcrowding that she experienced at the bar." Id. at ¶¶ 6-5.  Plaintiffs then took a taxi back to 52 Broad Street.  Id. at ¶ 7.  After they arrived, Ianuale "called the Keyport Police on the non-emergency number… requesting an officer to be dispatched… to MEDIATE a non-violent situation, to make sure that Plaintiff Alvarez left the property and was safe in her attempt to be picked up by her friend." Id. at ¶ 10 (emphasis in the original).  Ianuale explained, "Plaintiff Alvarez was in an intoxicated, anxious and emotional state to the point of mania, which is the sole reason why Plaintiff Ianuale called the Keyport Police to mediate the situation so it would not escalate into anything worse." Id. at ¶ 18.

Shortly thereafter, Plaintiffs claim that both Officers Ferm and Ruth arrived while Alvarez was waiting outside for her friend.  Id. at ¶ 11.  Philip Ianuale, a witness, then "walked up and spoke with Plaintiff Alvarez," and Alvarez "indicated [to Philip Ianuale] that everything was fine and that she was being picked up by her friend momentarily." Id. at ¶ 12.  Philip Ianuale noted that Alvarez "had no injuries or marks on her person." Id. at ¶ 13.  Plaintiffs claim that Officer Ferm then threatened Philip Ianuale to "vacate the area" or be subject to arrest.  Id. at ¶ 14.  Plaintiffs further claim that the Officers asked Alvarez "if she was OK, to which she responded that 'everything was fine' and that 'she just wanted to go home.'" Id. at ¶ 16.  Officers Ferm and Ruth then instructed Alvarez "to go back inside the building and go up-stairs… even though she clearly told the officers that she was being picked up by her friend." Id. at ¶ 17.

During a discussion between Ianuale and Officer Ferm, Ianuale informed the Officer "that there was a video that would show there had been no physical altercation between Plaintiff Ianuale and Plaintiff Alvarez." Id. at ¶ 19 (emphasis in the original).  Plaintiffs maintain that the Video showed that "at NO TIME did any violence occur, nor did Plaintiff Alvarez or Plaintiff Ianuale have any intent to cause injury to each other." Id. at ¶ 21.  Nevertheless, after Officer Ferm watched

the Video, Plaintiffs claim that the Officer "placed hand-cuffs on Plaintiff Ianuale," and that "Defendant Ferm said: 'You're under arrest for Criminal Mischief.'" Id. at ¶ 22. Plaintiffs further claim that "[a]t no point in time did Plaintiff Alvarez request or state to the officers that she wanted to file any type of complaint against Plaintiff Ianuale." Id. at ¶ 24. Alvarez was also placed under arrest for simple assault. See id. at ¶ 27. Ianuale insists that he did not "request or state to the officers that he wanted to file any type of complaint against Plaintiff Alvarez," id. at ¶ 25, and he "repeatedly told the officers that Plaintiff Alvarez did not strike him and there was no reason to place Plaintiff Alvarez under arrest." Id. at ¶ 28.

According to Plaintiffs, they "showed NO SIGNS OF ANY TYPE OF INJURY that would give the officers any indication of a domestic violence dispute." Id. at ¶ 30 (emphasis in the original). The Officers "did not witness any altercation between Plaintiff Ianuale and Plaintiff Alvarez." Id. at ¶ 31. And, as such, "Defendant Ferm and Defendant Ruth DID NOT have any probable cause to believe that an act of domestic violence had been committed." Id. at ¶ 33 (emphasis in the original). In addition, "[n]either Plaintiff Ianuale nor Plaintiff Alvarez were given their Miranda Rights during the time of the arrests or thereafter." Id. at ¶ 35.

At the police station, Officer Ferm interviewed Alvarez, see id. at ¶ 36, even though she "was clearly in a heightened emotional state to the point of mania, due to the combination of alcohol intoxication and under the influence of prescription medication for the anxiety that she was experiencing shortly before the arrest." Id. at ¶ 37. According to Plaintiffs, Officer Ferm told Alvarez that Ianuale was pressing charges against Alvarez for assault, and then the Officer instructed Alvarez "to write a retaliatory statement against Plaintiff Ianuale." Id. at 38. "Plaintiff Ianuale overhead Plaintiff Alvarez blurt out excited statements, since she was under the impression that Plaintiff Ianuale was now pressing charges against her." Id. at ¶ 39. However, Alvarez "has

no recollection of what was written in the statement, which she considers a byproduct of her drinking/medication and her state of mind during the time of her 'interview.'"   Id. at ¶ 40. Nonetheless, Alvarez was able to recall that Officer Ferm "had handed her a paper and told her to write stuff down and make it seem believable."   Id. at ¶ 41.

Furthermore, according to Plaintiffs, Officer Ferm made promises to Alvarez, stating, "[w]hen court comes around, come see me before seeing the prosecutor and I'll have the charges dropped against you if you write this statement."   Id. at ¶ 43.  Officer Ferm also "tried to persuade Plaintiff Alvarez that she had a 'red mark' on her face from 'Robert [Ianuale] hitting you.'"   Id. at ¶ 44.  However, Plaintiffs explain that "any redness would have been the result of [Alvarez's] hands being pressed against her face while she was crying due to being wrongfully placed in handcuffs, since the alleged mark was not there when the officers originally arrived at the scene." Id. at ¶ 44.  In addition, Plaintiffs maintain that Officer Ferm "repeatedly tried several times to have Plaintiff Alvarez sign a Temporary Restraining Order (TRO) against Plaintiff Ianuale, to which she refused each time."   Id. at ¶ 46.  Officer Ruth, similarly, tried to have Ianuale sign a temporary restraining order against Alvarez, but he declined as well.   Id. at ¶ 49.  After Ianuale refused to provide the Officers with a statement, id. at ¶ 47, Ianuale was informed that "he would also be charged with Simple Assault against Plaintiff Alvarez."[6]   Id. at ¶ 50.

---

[6] In their Counterstatement of Material Facts, Plaintiffs assert that Officer Ferm and other unidentified Borough police officers intentionally harassed Plaintiffs in violation of their constitutional rights after their arrest on November 28, 2013.  For instance, two days after their arrest, Plaintiffs allege that Officer Ferm issued Ianuale a noise complaint summons, and that Officer Ferm "unfairly targeted Plaintiff Ianuale, due to the incident he responded to 48 hours earlier with Plaintiff Ianuale and Plaintiff Alvarez at the same address."  Pls.' Counterstatement at ¶¶ 58-67.  In addition, Plaintiffs further allege that "two Keyport Police Officers illegally entered Plaintiff Ianuale's office building by opening a closed door, without any warrant or probable cause," in March 2014.  Id. ¶¶ 87-91.  Nevertheless, Plaintiffs have not pled these allegations in their Complaint, and as such, Plaintiffs cannot buttress their claims against Defendants with these unpled allegations of subsequent misconduct.  Moreover, those alleged subsequent acts are

On May 13, 2014, Plaintiffs appeared at the Municipal Court in connection with charges related to the alleged domestic dispute that occurred on November 28, 2013.  According to Plaintiffs, "Plaintiff Ianuale's attorney spoke with the prosecutor regarding the lack of evidence to suggest that any crime had been committed," and the prosecutor allegedly told Ianuale's attorney that Officer Ferm "was 'enraged' and completely aware that no video evidence existed [showing a crime] and that Defendant Ferm was refusing to dismiss the complaint against Plaintiff Ianuale." Id. at ¶¶ 96-97.  In that connection, Plaintiffs submit that Ianuale's attorney spoke with the prosecutor, who "was reluctant to prosecute and about to sign the paper in order to drop the charges, until Defendant Ferm stormed into the room, making a huge deal about dropping the charges because the Notice of Tort Claim that had been previously filed against him and Keyport Township."  Id. at ¶ 98.  As such, Plaintiffs allege that they "were forced into signing Plea Agreements under duress for non-criminal disorderly person's offenses, under a town ordinance." Id. at ¶ 99.

### (iii).   Procedural Background

Plaintiffs filed their Complaint on November 24, 2015, asserting the following claims: Count I – wrongful arrest and malicious prosecution against Officers Ferm and Ruth,[7] see id. at ¶¶ 31-34; Count II – false arrest and false imprisonment under 42 U.S.C. § 1983 against the Borough, and Officers Ferm and Ruth, see id. at ¶¶ 35-38; Count III – malicious prosecution under 42 U.S.C.

---

unrelated to Plaintiffs' arrest in connection with the alleged domestic dispute and the resulting plea agreements.

[7] While not expressly stated, it appears that Plaintiffs are asserting New Jersey common law claims for false arrest, false imprisonment and malicious prosecution against Officers Ferm and Ruth in Count I.

§ 1983 against the Borough, and Officers Ferm and Ruth, see id. at ¶¶ 39-43; Count IV – failure

to train under 42 U.S.C. § 1983 against the Borough and Chief Casaletto, see id. at ¶¶ 44-51; Count

V – unlawful policy, custom or practice and inadequate training under 42 U.S.C. § 1983 against

the Borough and Chief Casaletto, see id. at ¶¶ 52-61; Count VI – malicious prosecution and false

arrest and false imprisonment under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq. (the

"NJCRA") against Officers Ferm and Ruth, see id. at ¶¶ 62-64; Count VII – deprivation of

Plaintiffs' civil rights in violation of the New Jersey Constitution under NJCRA against

Defendants, see id. at ¶¶ 65-72; Count VIII – common law intentional infliction of emotional

distress against Officers Ferm and Ruth, see id. at ¶¶ 73-77.  Defendants now move for summary

judgment to dismiss Plaintiffs' Complaint on the basis of qualified immunity, which Plaintiffs

oppose.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on

which a reasonable jury could find for the non-moving party," and it is material only if it has the

ability to "affect the outcome of the suit under governing law."  Kaucher v. County of Bucks, 455

F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Anderson, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may

not make credibility determinations or engage in any weighing of the evidence; instead, the non-

moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his

favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." Id. at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Id. Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324; see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. "[A] complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

## III.   DISCUSSION[8]

## 1.   Qualified Immunity

Officers Ferm and Ruth[9] argue that they are entitled to qualified immunity because they have not violated any of Plaintiffs' constitutional rights.  Specifically, the Officers reason that Ianuale invited them into his apartment to view the Video, which showed: (i) Ianuale physically blocking Alvarez from exiting a room in the apartment, and then snatching her cellphone from her hand and smashing it on the hardwood floor, which caused damage; and (ii) in response, Alvarez started punching and kicking Ianuale.  Based on their observations, Officers Ferm and Ruth reasonably believed that probable cause existed to arrest both Plaintiffs on domestic violence related charges.  In the alternative, even if the Officers were mistaken, they are still entitled to qualified immunity because it was reasonable for the Officers to believe that a domestic disturbance had transpired, and the Officers, therefore, had probable cause.  Finally, Defendants contend that both Plaintiffs pled guilty to a lesser offense of disorderly conduct, and that each Plaintiff stipulated to the existence of probable cause for the arrest.

---

[8] Plaintiffs argue that Defendants' motion for summary judgment should be denied because Defendants are in default.  However, the Magistrate Judge vacated the entry of default as to all Defendants, see Order dated April 4, 2016, and thus, I need not address this argument.

[9] Plaintiffs assert claims against Officers Ferm and Ruth in their individual and official capacities; however, Plaintiffs' claims against the Officers in their official capacity are dismissed because the Officers are not persons under § 1983.  Hafer v. Melo, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for the purposes of the suit because they assume the identity of the government that employs them."); see Walker v. Beard, 244 Fed. App'x 439, 440-441 (3d Cir. 2007).

In opposition, Plaintiffs erroneously contend that they pled guilty to lesser, different charges, and as a result, "probable cause for [their] associated criminal offenses" in their plea agreements cannot serve as the basis for probable cause for their underlying arrest.[10]  Pls.' Brief at pg. 27.  Plaintiffs further argue that their stipulations as to probable cause are invalid because "neither Plea Agreement included the requisite initials by Plaintiff Ianuale and Plaintiff Alvarez," and as such, "Plaintiffs cannot be held to acknowledge any stipulation of probable cause nor adhering to no civil action."  Id.  Finally, Plaintiffs argue that Officers Ferm and Ruth did not have probable cause to effectuate Plaintiffs' arrest, since "[i]t is clear that that [sic] Defendants entire argument is based on a purported **non-existent** video claimed to be witnessed by Defendant Ferm and Defendant Ruth, which allegedly depicted Plaintiffs in a domestic dispute."[11]  Pls.' Brief at pg. 38 (emphasis in the original).  In particular, Plaintiffs reason, "[o]ne would presume that if such a video had existed and was the basis for Defendants' probable cause to arrest Plaintiffs, then the arresting officers would have confiscated the video as evidence to ensure a conviction."  Id. at 30.  Rather, "Defendants fabricated a story, misrepresenting it as a material fact, in order to try to establish probable cause."  Id.

---

[10] In addition, Plaintiffs contend that Defendants violated the New Jersey Rules of Professional Conduct 3.4(g), which provides that a lawyer, including a prosecutor, shall not "present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter."  Plaintiffs reason, "if Defendants were willing to violate the R.P.C., one can only guess what else Defendants have either lied about, fabricated, or maliciously intended to and have done to Plaintiffs, and more importantly, what Defendants intend to do regarding Plaintiffs' civil action against them."  Pls.' Brief at pg. 29.  However, none of the Defendants are lawyers, and as such, the New Jersey Rules of Professional Conduct are not applicable.

[11] Plaintiffs do not appear to dispute the existence of the Video, but rather, they simply dispute what that Video shows, i.e. evidence that Plaintiffs committed a crime in connection with their domestic dispute on November 28, 2013.

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted); see Carswell v. Borough of Homestead, 381 F.3d 235, 242-243 (3d Cir. 2004) (stating that "qualified immunity is an objective question to be decided by the court as a matter of law"); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (stating that the qualified immunity standard is one of "objective legal reasonableness."). This protection exists "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted); see Malley v. Briggs, 475 U.S. 335, 341 (1986) (stating that qualified immunity "protects all but the plainly incompetent").

In deciding whether a police officer is entitled to qualified immunity, a court examines: (1) whether the facts alleged make out a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct. See Pearson, 555 U.S. at 232; see also Kelly v. Borough of Carlisle, 544 Fed. App'x 129, 133-34 (3d Cir. 2013). In order to be clearly established, a right must be sufficiently clear that a reasonable police officer would have known that his or her conduct was unlawful. Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); see Coles v. Carlini, 162 F. Supp. 3d 380, 399-400 (D.N.J. 2015). However, courts are permitted to address either prong of the analysis first in light of the circumstances at hand. See Pearson, 555 U.S. at 236. Finally, the defendants bear the burden to prove qualified immunity. See Thomas v. Independence Twp., 463 F.3d 285, 292 (3d Cir. 2006); Hicks v. Feeney, 850 F.2d 152, 159 (3d Cir. 1988).

    **a.**       **False Arrest and False Imprisonment**

Plaintiffs have asserted a claim for false arrest and false imprisonment: (i) under New Jersey common law against Officers Ferm and Ruth in Count I; (ii) under § 1983 against the Borough, and Officers Ferm and Ruth in Count II; and (iii) under NJCRA against Officers Ferm and Ruth in Count VI. Officers Ferm and Ruth argue that they are entitled to qualified immunity because both Plaintiffs executed a plea agreement in which they stipulated that probable cause existed for their arrest. I agree.

If an arrest was made without probable cause, then a plaintiff has a Fourth Amendment claim for false arrest under § 1983. Pollock v. City of Philadelphia, 403 Fed. App'x 664, 669 (3d Cir. 2010); O'Connor v. City of Philadelphia, 233 Fed. App'x 161, 164 (3d Cir. 2007). Furthermore, where an officer lacks probable cause to effectuate an arrest, a plaintiff also has a separate claim under § 1983 for false imprisonment based on his or her detention pursuant to that arrest. O'Connor, 233 Fed. App'x at 164; Adams v. Selhorst, 449 Fed. App'x 198, 201 (3d Cir. 2011). Importantly, courts apply the same standard for false arrest and false imprisonment under both § 1983, NJCRA and New Jersey common law. See Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (applying the same analysis for the plaintiffs' NJCRA and § 1983 claims for false arrest, since "[t]his district has repeatedly interpreted NJCRA analogous to § 1983."); see also Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (2007) (stating that, under New Jersey common law, probable cause is an absolute defense to false arrest and false imprisonment).

In regard to claims of false arrest and false imprisonment, "the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal prosecution." Palma v. Atlantic County, 53 F. Supp. 2d 743, 769 (D.N.J. 1999); see Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the

facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 153 (2004); see United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) ("Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."); see also Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) (stating that courts must employ a "common sense approach" to determine whether probable cause existed to arrest).

Additionally, probable cause may be found where a criminal defendant pleads guilty to an offense, even if the criminal defendant did not stipulate to probable cause in his or her plea agreement. Walker v. Clearfield Cnty. Dist. Attorney, 413 Fed. App'x 481, 483 (3d Cir. 2011) (stating that "a guilty plea – even one for a lesser offense – does not permit a later assertion of no probable cause."); see Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also Ferry v. Barry, No. 12-009, 2012 U.S. Dist. LEXIS 134600, at *12-13 (D.N.J. Sept. 19, 2012) (holding that the plaintiff was unable to demonstrate the absence of probable cause, since the plaintiff pled guilty to lesser charges under the municipal ordinance, which "directly contradict[ed] [the plaintiff's] assertion that no probable cause existed for his arrest."); White v. Brown, No. 08-606, 2010 U.S. Dist. LEXIS 41583, at *13 n.4 (D. Del. 2010) ("Courts have found that a guilty plea, standing alone, represents sufficient evidence of probable cause to justify an arrest."). Importantly, even when the plea agreement results in a lesser offense, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." See Frantz v. Gress, 359 Fed. App'x 301,

303 (3d Cir. 2009) (internal quotation marks and citation omitted); see also Walker, 413 Fed. App'x at 483.

Here, Plaintiffs contend that Officers Ferm and Ruth did not have probable cause to effectuate Plaintiffs' arrests on November 28, 2013, "since no [] video existed of Plaintiffs allegedly committing any acts of domestic violence, coupled with the fact that Plaintiffs never told officers that there was a domestic violence dispute nor that any violence had even occurred." Pls.' Br. at pg. 37. While the Officers suggest that the Video shows evidence of a crime, I recognize that there are disputed issues of fact as to what the Video actually shows. However, one critical fact is undisputed: both Ianuale and Alvarez pled guilty to a downgraded charge of violating Keyport Municipal Ordinance 4-18.3, a disorderly person offense, in a negotiated effort to resolve their simple assault and criminal mischief charges.[12] See Walker, 413 Fed. App'x at 483. In New Jersey, simple assault and criminal mischief are disorderly persons offenses, pursuant to the State

---

[12] Plaintiffs do not dispute the authenticity of their respective plea agreements, nor do they contend that the plea agreements cannot be considered on a motion for summary judgement. See Alevras v. Tacopina, 226 Fed. App'x 222, 229 (3d Cir. 2007) (record evidence of a plea agreement may be properly considered on a motion for summary judgment). Furthermore, Plaintiffs cannot challenge the validity of their guilty pleas in this Court, pursuant to Heck v. Humphrey, 512 U.S. 477, 486-487 (1994), which held that a plaintiff cannot bring a § 1983 action that impugns the validity of his or her criminal conviction, unless that conviction has been reversed on direct appeal or impaired by collateral proceedings. See Gilles v. Davis, 427 F.3d 197, 209 n.8 (3d Cir. 2005) (stating that the Heck analysis applies to guilty pleas as well as convictions). But, Plaintiffs appear to argue that they were forced into pleading guilty by Defendants and the prosecutor, despite offering no evidence to support that contention. While the Third Circuit has not addressed the issue of an allegedly coerced plea in the Heck context, other circuits have held that Heck prevents a plaintiff from challenging his or her guilty plea based on coercion. See, e.g., Connors v. Graves, 538 F.3d 373, 378 (5th Cir. 2008) (holding that, to the extent that the plaintiff alleges that the defendants coerced him into pleading guilty, the plaintiff is barred by Heck unless and until his conviction is reversed or set aside); Holly v. Boudreau, 103 Fed. App'x 36, 38 (7th Cir. 2004) (stating that if the plaintiff is seeking to establish that the police falsified the police report to coerce his guilty plea, "that claim is barred by Heck."). The Court agrees with the reasoning in those cases.

statutes.  See State v. Miller, 382 N.J. Super. 494, 498 (App. Div. 2006) (stating that simple assault, N.J.S.A. 2C:12-1, is a disorderly persons offense); State v. Dalal, 438 N.J. Super. 156, 158 (App. Div. 2014) (stating that criminal mischief, N.J.S.A. 2C:17-3, is also a disorderly persons offense). Thus, it follows that the Officers could have charged Plaintiffs with a violation of the Borough's disorderly persons ordinance, see Frantz v. Gress, 359 Fed. App'x at 303, which is a lesser offense to the statutory offenses of simple assault and criminal mischief.  See State v. Owens, 54 N.J. 153, 156-157 (1969); see, e.g., Martinez v. New Jersey, No. 11-2223, 2012 U.S. Dist. LEXIS 80298, at *10-12 (D.N.J. Jun. 8, 2012) (dismissing the plaintiff's claims for false arrest and malicious prosecution, since the plaintiff pled guilty to an amended charge of disorderly conduct under a municipal ordinance, which was a negotiated effort to resolved a criminal complaint for aggravated assault); McGann v. Collingswood Police Dep't, No. 10-3458, 2012 U.S. Dist. LEXIS 178019, at *31-32 (D.N.J. Dec. 17, 2012) (dismissing the plaintiff's claims for false arrest, false imprisonment and malicious prosecution because the plaintiff pled guilty to an amended charge of violation of peace and good order under a municipal ordinance, which was a reduction from the original criminal charges of aggravated assault).  Because Plaintiffs pled guilty to lesser charges under the Borough's municipal ordinance, Plaintiffs are now precluded from contending that Officers Ferm and Ruth lacked probable cause to effectuate their arrests.  See Walker, 413 Fed. App'x at 483. Moreover, Plaintiffs' argument that their stipulations as to probable cause are invalid must also fail, since the inquiry here focuses on whether Plaintiffs pled guilty, because it is their plea agreements that establish probable cause.  See id.  It is immaterial whether Plaintiffs stipulated to probable cause.  Thus, without Plaintiffs establishing the absence of probable cause, the actions of Officers Ferm and Ruth were objectively reasonable in light of the circumstances, and as such, Plaintiffs cannot make out a violation of false arrest and false imprisonment.  Accordingly, the

Officers are entitled to qualified immunity for false arrest and false imprisonment under § 1983, NJCRA and New Jersey common law.  See Pearson, 555 U.S. at 232; Capone v. Marinelli, 868 F.2d 102, 106 n.6 (3d Cir. 1989).

In addition, Plaintiffs' claims under § 1983 against the Borough must fail, as well.  Because municipal liability cannot be based on the doctrine of respondeat superior, Plaintiffs must allege that their constitutional deprivation resulted from an official custom or policy in the context of false arrest and imprisonment.  See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-694 (1978).  Here, Plaintiffs have failed to identify any custom or policy, which resulted in their constitutional deprivation, nor have they alleged any conduct by the Borough.  See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (stating that a plaintiff must actually "identify a custom or policy, and specify what exactly that custom or policy was," as well as "allege conduct by a municipal decisionmaker.").  Accordingly, Plaintiffs' § 1983 claims for false arrest and false imprisonment against the Borough are dismissed.

### b.   **Malicious Prosecution**

Plaintiffs assert a claim for malicious prosecution: (i) under New Jersey common law against Officers Ferm and Ruth in Count I; (ii) under § 1983 against the Borough, Officers Ferm and Ruth in Count III; and (iii) under the NJCRA against Officers Ferm and Ruth in Count VI. Defendants argue that Plaintiffs cannot maintain their claims for malicious prosecution because Plaintiffs pled guilty to a lesser offense, which included a stipulation of probable cause, and that Plaintiffs' plea agreements have not been invalidated.  As such, Plaintiffs cannot establish that the criminal proceedings ended in their favor.  I agree.

A claim for malicious prosecution "is actionable under 42 U.S.C. § 1983, because it undermines an individual's right to be free from unreasonable seizures under the Fourth

Amendment." Id.  To establish a claim under § 1983 for malicious prosecution, a plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009); see Trafton, 799 F. Supp. 2d at 443 (stating that the analysis under § 1983 is the same as the NJCRA, since courts have "repeatedly interpreted NJCRA analogous to § 1983").  Similarly, a New Jersey common law claim for malicious prosecution requires a plaintiff to establish: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff."  LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009).

Under both federal and state claims for malicious prosecution, a plaintiff must establish that the underlying criminal proceeding ended in his or her favor.  See McKenna, 582 F.3d at 461; LoBiondo, 199 N.J. at 90.  However, a plaintiff cannot satisfy this requirement if he or she pled guilty to the criminal charge or a lesser charge.  See Walker, 413 Fed. App'x at 483 ("Borrowing from the closely analogous malicious prosecution context, we conclude that a guilty plea – even one for a lesser offense – does not permit a later assertion of no probable cause."); see also Hassan v. City of Camden, No. 08-5074, 2010 U.S. Dist. LEXIS 117425, at *15 (D.N.J. Nov. 4, 2010) (stating that "Plaintiff pled guilty to lesser charges," and that the "lesser charges cannot be the basis of a malicious prosecution claim because Plaintiff's guilty plea means that the proceedings were not terminated in his favor."); Rogers v. Henry, No. 02-3495, 2005 U.S. Dist. LEXIS 36410, at *17 (D.N.J. Dec. 23, 2005) ("Plaintiff has not presented sufficient evidence to support his claim

for malicious prosecution. Because charges against Plaintiff were dropped pursuant to a guilty plea, those proceedings cannot be said to have terminated in his favor."); Mondrow v. Selwyn, 172 N.J. Super. 379, 384-385 (App. Div. 1980) ("If the charge is withdrawn or the prosecution is abandoned pursuant to an agreement of compromise with the accused.... the accused may not later contend that the proceedings terminated in his favor.").

Here, it is undisputed that Plaintiffs pled guilty to a disorderly person offense under the municipal ordinance, and as such, Plaintiffs cannot establish that their criminal proceedings terminated in their favor.  See Hassan, 2010 U.S. Dist. LEXIS 117425, at *15; Rogers, 2005 U.S. Dist. LEXIS 36410, at *17; Mondrow, 172 N.J. Super. at 384-385.  For that reason alone, Plaintiffs' claims for malicious prosecution must fail.  Furthermore, for the reasons I just explained, supra, Plaintiffs are precluded from arguing that Officers Ferm and Ruth lacked probable cause because Plaintiffs pled guilty, albeit to lesser charges.  See Walker, 413 Fed. App'x at 483 (stating that "a guilty plea – even one for a lesser offense – does not permit a later assertion of no probable cause.").  Thus, Plaintiffs cannot establish that Officers Ferm and Ruth initiated the criminal action without probable cause.  See McKenna, 582 F.3d at 461; LoBiondo, 199 N.J. at 90.  Based on the undisputed fact that Plaintiffs pled guilty to a disorderly persons offense under the municipal ordinance, the Officers' actions on November 28, 2013 were objectively reasonable, and as such, Plaintiffs cannot make out a violation for malicious prosecution.  Accordingly, the Officers are entitled to qualified immunity for malicious prosecution under § 1983, NJCRA and New Jersey common law.  See Pearson, 555 U.S. at 232; Capone v. Marinelli, 868 F.2d 102, 106 n.6 (3d Cir. 1989).

Finally, Plaintiffs' claims under § 1983 for malicious prosecution against the Borough must also fail because Plaintiffs have failed to identify a custom or policy, which resulted in their

constitutional deprivation, nor have they alleged conduct by the Borough.  See McTernan, 564 F.3d at 658; see also Monell, 436 U.S. at 691-694.  Accordingly, Plaintiffs' § 1983 claim against the Borough is dismissed.

## 2.      Municipal Liability[13]

Defendants generally argue that Plaintiffs have failed to provide any evidence to demonstrate a policy or custom that deprived Plaintiffs of their constitutional rights, and as such, Plaintiffs' claims should be dismissed.  In response, relying on the Fourth and the Fourteenth Amendments, Plaintiffs contend that they have sufficiently alleged that the Borough and Chief Casaletto "have tacitly approved and acquiesced to its police officers' (1) unlawfully arresting individuals without probable cause; (2) entering buildings without probable cause; and (3) harassing citizens without any justification, as indicated through the attached exhibits."[14] Pls.' Br. at pg. 31.  Plaintiff further argue that they "have presented facts showing that this type of

---

[13] To the extent that Plaintiffs assert a Monell claim directly against the Police Department, the Police Department is entitled to summary judgment because a municipal police department is not a separate entity from the municipality.  See Woodyard v. County of Essex, 514 Fed. App'x 177, 181 (3d Cir. 2013); Jackson v. City of Erie Police Dep't, 570 Fed. App'x 112, 114 (3d Cir. 2014); see also Moore v. Carteret Police Dep't, No. 13-943, 2014 U.S. Dist. LEXIS 170256, at *25 (D.N.J. Dec. 8, 2014).

[14] In their opposition brief, Plaintiffs also seek to establish their municipal liability claims by presenting "evidence," inter alia, of subsequent events, i.e. that Officer Ferm harassed Plaintiffs by issuing a noise complaint summons to Ianuale, and that two unidentified Borough Police officers broke into Plaintiffs' residence without probable cause.  See Pls.' Br. at pg. 31.  As I stated, supra, Plaintiffs have failed to assert these particular allegations in their Complaint, and thus, Plaintiffs are precluded from supporting their claims against Defendants with unpled allegations of subsequent misconduct.  Accordingly, on Plaintiffs' Monell claims, I will only consider those allegations relating to Plaintiffs' arrests and plea agreements in connection with the domestic dispute on November 28, 2013.

unconstitutional behavior was caused by deliberate indifference to unconstitutional policies, practices, customs and/or procedures existing in the Keyport Police Department." Id.

In their Complaint, Plaintiffs have asserted the following claims against the Borough and Chief Casaletto under Monell: (i) a supervisory liability claim for failure to train in Count IV; (ii) a claim for maintaining an unlawful policy, practice or custom in Count V; and (iii) a claim for failure to train in Count V.  Because I have already dismissed Plaintiffs' allegations of the underlying constitutional injuries, i.e. federal constitutional claims against Officers Ferm and Ruth for malicious prosecution, false arrest and false imprisonment, Plaintiffs cannot maintain their parallel Monell claims against the Borough and Chief Casaletto under § 1983.  See Marable v. West Pottsgrove Twp., 176 Fed. App'x 275, 283 (3d Cir. 2006) (stating that "a municipality may not incur Monell liability as a result of the actions of its officers when its officers have inflicted no constitutional injury."); Williams v. West Chester, 891 F.2d 458, 467 (3d Cir. 1989) (stating that a municipal defendant "cannot be vicariously liable under Monell unless one of [its] employees is primarily liable under section 1983 itself."); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) (stating that a there can be no Monell or supervisory liability if there is no underlying constitutional injury); Mattern v. City of Sea Isle, 131 F. Supp. 3d 305, 318 (D.N.J. 2015) (reasoning that every Monell claim requires an underlying constitutional violation); Moore v. Carteret Police Dep't, No. 13-943, 2014 U.S. Dist. LEXIS 170256, at *25 (D.N.J. Dec. 8, 2014) (stating that, because no claims against the officer for malicious prosecution and false arrest and imprisonment survived, the plaintiff "cannot maintain claims against the Borough of Carteret."). Accordingly, Counts IV and V are dismissed.

**3.     Supplemental Jurisdiction**

With the dismissal of Plaintiffs' federal constitutional claims, the remaining claims are as follows: (i) New Jersey common law intentional infliction of emotional distress in Count VII, and (ii) violations of the New Jersey Constitution under NJCRA in Count VIII, which are separate and apart from Plaintiffs' claims for malicious prosecution, false arrest and false imprisonment. Although Defendants have moved to dismiss Plaintiffs' Complaint, they make no arguments in that regard to these state law claims.

Under 28 U.S.C.S. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.S. § 1367(c)(3). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.S. § 1331. Because Plaintiffs' remaining claims are purely state law based, and there is no claim over which I have original jurisdiction, I decline to exercise supplemental jurisdiction, particularly because this case is in its infancy. See Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, this matter is dismissed without prejudice and the statute of limitations tolled, and Plaintiffs may re-file their remaining state law claims in State court within thirty (30) days from the date of the Order accompanying this Opinion, pursuant to 28 U.S.C.S. § 1367(c)-(d). See Hedges v. Musco, 204 F.3d 109, 123-124 (3d Cir. 2000).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part, denied in part. Officers Ferm and Ruth are entitled to qualified immunity on Plaintiffs' claims for false arrest and false imprisonment in Counts I, II and VI, and malicious prosecution in Counts I, III and VI. Plaintiffs' claims against the Borough in connection with their claims for false arrest, false imprisonment and

malicious prosecution are dismissed, as well.  In addition, Plaintiffs' <u>Monell</u> claims in Counts IV

and V are dismissed.  Finally, I decline to exercise supplemental jurisdiction over Plaintiffs' state

law based claims for intentional infliction of emotional distress claim in Count VII and Plaintiffs'

NJCRA claims in Count VIII.  Therefore, this matter is dismissed without prejudice and the statute

of limitations tolled, and Plaintiffs may re-file their state law claims in State court within thirty

(30) days from the date of the Order accompanying this Opinion.

DATE: October 13, 2016

<u>/s/ Freda L. Wolfson</u>
The Honorable Freda L. Wolfson
United States District Judge